Your Honors, good morning. May it please the Court, I am David Sampson, counsel for the appellants in this case. It is my intention to reserve five minutes for rebuttal. We'll see how that goes. As Your Honors are well aware, this case involves an entry of summary judgment in an insurance bad faith case. And those words in of themselves ought to give this Court reason to perk its ears up, as the Nevada Supreme Court held in the Miller v. Allstate case, quote, What is good faith or bad faith on an insurer's part has a not yet proved susceptible to definitive legal definition. An insurer's good faith is essentially a matter of fact. Now, those are not my words. Again, those come from our own Nevada Supreme Court, from the Nevada Supreme Court, which under the Erie Doctrine sets forth a law that should be followed in this case. And almost every Supreme Court describing, in our circuit anyway, describing the covenant of good faith and fair dealing in the context of insurance says about the same thing. Absolutely. So then they all go on to say, but, and here we are. So not every case that gets pled goes to trial, as you know, as a legislative counsel. Absolutely. So talk about this case. We have some delays. We have a failure to disclose. What does that entitle you to get past summary judgment? Well, Your Honor, the reason is, it's a question of whether or not the insurance company acted reasonably. And when we've had, at least in the State of Nevada, summary judgment in an insurance bad faith case, up to this point, it has always hinged on an interpretation of a contract or whether or not the individual who's bringing a claim has standing. Never once has the Nevada Supreme Court said, based on the facts of this case, we find that the insurance company acted reasonably or unreasonably as a matter of law. The closest case, and it's cited by the Respondent, was the MGM case, which involved contract interpretation. There was a dispute as to when an insurance company had an obligation to make certain payments. Do they have to wait until all claims were resolved, or do they have to pay along the way? The lower court found, and there was no dispute, the insurance company's position was, we pay at the end, and they waited to pay at the end. The district court found that was improper. There was an improper interpretation of the contract, and so their conduct in waiting until the end, given the interpretation was you had to pay as you go, was unreasonable and improper. The Nevada Supreme Court found simply, no, the insurance company's interpretation was, in fact, appropriate, and they are required under the statute, under the contract to pay at the end, and their decision to pay at the end was appropriate. And there was no dispute at that point in time as to what exactly went on.  But in taking those facts, in viewing them in a light most favorable to the nonmoving party, we have the following. A claim package arrives, and it's also important that in viewing those facts, the issue is, what information did the insurance company have, when did they have it, and what did they do with it? And notions of, well, hold on, we want to compare what the claimant did with what the insurance company did, and look at motives, that was set out definitively in the Miller v. Allstate case, which found that Allstate's claim in that case that the claimant and their counsel's motives ought to be put on trial were, quote, without merit, close quote. It's a simple case of what information did the insurance company have, and what did they do with it. Right. So let's get to it. Absolutely. You have first, you, it was a man to settle within policy limits of $15,000. Two weeks were given to accept or deny. True. The request was made that they. And the insurance company at that point had meds of about $2,000 in front of them. There were medical bills of approximately $2,000, and there was an indication that there was a more serious injury that required treatment at Centennial Spine Facility, which is. Did he claim that the insurance company should have tendered policy limits based on that information? I think they most certainly had an obligation. First of all, I would contend at this point, that is a question for the jury to decide. And the evidence certainly from Tom Corridan, the expert that was identified by the plaintiff in the case, indicated absolutely, based on what had gone on, the medical expenses, certainly there was an obligation to perform the investigation, have the investigation. I'm talking about the duty to settle. If you had given them six months, it would be a different story, but you gave them two weeks. And all they had were $2,000 in medical bills, plus an indication there might be more. Okay. And then, correct. I think they're at most, you had an obligation, because liability was reasonably clear, to tender the medical payments. But you demanded policy limits. The demand was for policy limits. There certainly is an obligation, as Mr. Corridan indicated, to start and commence some type of an investigation, start and commence some type of a negotiation, because I think, in fairness, Your Honor, it's more than simply tendering medical bills. It's tendering and adjusting an amount for pain and suffering and for other inconveniences associated with the claim. Rather than do that, the insurance company doesn't even read that letter, according to the evidence, until 9-14, which is some three weeks later, and then they send a letter back to the claimant that says, okay, now that it's been, I think, two weeks and the claim, which, as you can imagine, didn't sit very well with Mr. Cleckley looking at this going, well, hold on, it's been now almost three weeks and they're just now going to get started. But that's fine. If the Court wants to overlook that, they start it. I mean, I'm just, again, my jurisdiction, Montana, is a lot more pro-plaintiff than Nevada. And I would say that it's unremarkable in our jurisdiction to have a two- or three-week delay in investigation. It's not remarkable to have a letter going back saying, give me more information. So I'm just, I'm just, the reason, I'm just giving you my reaction. Sure. And everyone's going to have a different position on whether that's remarkable or not, which is why we sit the appropriate numbers of jurors in the jury box and have them weigh the facts in Montana. But in Montana, that would not be enough. We're dealing with the Madelon. I'm just giving you my sort of judicial experience, is that Montana, that wouldn't be enough to get you to a jury. Well, the problem is, however, from that point forward on 9-14, and if it was a simple point where Mr. Cleckley said, you know what, they missed the two-week deadline, I'm no longer willing to settle, that was their only chance, we're finished here, it might be a different situation. But that was not the evidence in the case. The evidence in the case was specifically, Mr. Cleckley said, I was willing through the end of October to get the claim resolved. And the testimony from the adjuster was, it was my understanding through the end of October that I believed I still had an opportunity to resolve the claim. So what do they do in that time frame, Your Honor? But that understanding based on anything that was said by either counsel or the claimant? I believe the letter, and again, the letter doesn't say, the letter that first goes out on August 26th does not say, you've got two weeks, and at the end of two weeks, it's over, it's done, you'll have no other chance. It's not what the letter says. It says we're willing to accept the policy limits, and then the request is made, will you get those into our office within the next two weeks, which is done quite often to keep the claim on the front burner, make sure it doesn't get relegated and ignored or neglected. And so it's perfectly appropriate to make that type of a demand. The problem is, they request, Dairyland requests the medical records on the 14th, again, after the some three, some week delay. They request the medical records, and according to the evidence, they receive those records nine days later, on September 23rd. And for reasons that have still never been explained, no one at Dairyland even looks at those records until November 6th, which now is a month and a half later. And again, I'm not, I can't speak to how they would do things in Montana, but certainly in Nevada where we have a statute that says you're supposed to resolve the claim inside of 30 days. Getting records into the office, you have them now in your possession, and not looking at them for over a month and a half certainly is sufficient to give rise to a jury question as to whether or not that conduct is reasonable and represents an insurance company, as the Miller case said, putting its insured's interests on equal par with its own interests. They don't bother looking at it. And the question comes up from the decision, in which, with all due respect to Judge Jones, we believe does not view the light, the evidence in the light most favorable to the nonmoving party, because what the Court says is, well, there was no evidence as to when that, when those records actually appeared, which is inaccurate. First of all, there's a time-date stamp for September 23rd that the precision medical records appeared, and then there's a letter from, and it's actually Dairyland's own request for the records to Centennial, and it says faxed. Now, not, not from Dairyland, but the fax number at the top is it's faxed from Centennial to, the assumption needs to be that it's to Dairyland, especially when you view it in the light most favorable to the nonmoving party. Why would Centennial fax Dairyland's medical records request, together with a bunch of records, to anyone besides Dairyland? And viewing that to the light, in the light most favorable to the nonmoving party. Now, may I stop you just for a second? And I, and I take your point that we are not comparing conduct, but can you explain to me why you didn't send a copy of the summons and complaint to Dairyland? The summons and complaint was sent at the point where Mr. Cleckley advised that he was no longer willing to resolve the claim. The summons and the complaint are filed to protect. No, I understand. When, when it was sent, I'm just asking why. I think that was on November 8th, was when it was finally faxed over. When Mr. Cleckley indicated, this is no longer sufficient for me, I'm tired of waiting, it's been since August, it's now October, or it's now November, we're going to move forward. And coincidentally, it's on that day that the complaint is faxed to Dairyland, that Dairyland then says, you know what, okay, we'll pay the limits. And it's an extremely coincidental circumstance that the letter gets mailed out on the same day that the fax comes in from Dairyland, from the Claimants' Counsel, saying we want to pursue this matter. There's no point previously, when we file the complaint and get the service and everything together, in looking to see if the claim is going to be resolved, if it's going to be neglected, and absolutely. If the claim is neglected, Mr. Cleckley is well within his rights to say, I've waited long enough, this started back in August, it's now November, I've waited long enough, I want to move forward with the complaint. He's well within his rights to do that. And then when it turns out, you look at the information, it indicates, again, they had these records even from Centennial on September 23rd of 2005, which at that point indicate significant medical bills, injection therapy, a labral tear, and an upcoming surgery. And yet again, from 9-23 to November 6th, no one ever even looks at them. And that's directly out of the adjuster's testimony. And it is certainly sufficient to then say, all right, because we're looking at Mr. Hicks, the insured, dealing with his insurance company, saying, why didn't you protect me? And in looking at it, we say, all right, we had this month and a half period where these records are here. They show significant injury. There's been a discussion that the individual is willing to settle for the policy limits. The adjuster, per her own testimony, indicates she still believes she has an opportunity, the opportunity is available for them to resolve the claim, and yet the records aren't even reviewed. It is sufficient to do that. Which of us case in Nevada that says a month delay can process a good claim gives rise to bad faith? Better than a case, Your Honor, it's Nevada Administrative Code No. 686A. No, I know. I know that section, but you have to translate. It's not just the administrative law section, which may or may not create negligence per se argument. I'm just talking about what you have a case that's construed that statute that indicates that that gives rise to a violation of the covenant of fair dealing. I believe the best case that would indicate that it gives rise to a genuine issue of material fact on that point would be Miller v. Allstate, where in that case, Allstate tendered the  And the Nevada Supreme Court, nonetheless, said that's well and good. However, whether or not the insurance company informed it's insured and kept and advised what was going on and properly handled the claim is for the jury to decide. That's not a delay issue there. That was the informing the insured issue, right? Exactly. But, I mean, that's what we're talking about. If there's a month and a half delay, it will be back up. I'm sorry. If there's a payment within 13 days, and yet the Nevada Supreme Court says it's still a question for the jury to decide, then certainly a month and a half delay would likewise be a question of fact. It's my intention to reserve the remaining three minutes for rebuttal unless there's additional questions. Thank you. Thank you, Your Honors. Good morning, may it please the Court. Excuse me. My name is Ken Dick, and I represent Garyland Insurance Company on this appeal. Under the facts of this case and under the law that exists in the State of Nevada, Judge Robert Jones correctly and properly granted the summary judgment. Garyland did not, as a matter of law, commit bad faith so as to give rise to liability in this case. But before we look more in-depth at the bad faith issue, I think it's important that we first address and look at what is at issue on appeal and what is not at issue. In their complaint, the plaintiff set forth, excuse me, the appellant set forth numerous different causes of action, not only for bad faith, but for breach of contract, for an alleged violation of Nevada's Unfair Claims Practices Act, which is found in NRS 686a.310, and for punitive damages. When I filed the motion for summary judgment, I addressed each and every one of those causes of action and pointed out as a matter of law there was no merit to them. In his opposition, the appellant's attorney did not even address those other three causes of action. He limited his opposition strictly to the bad faith claim. And as such, as this Court has recognized, and as Judge Jones did below, he said there is no opposition, those portions of this action are hereby dismissed. This Court has recognized in the Ramirez decision that if a person raises a claim but abandons it at summary judgment so that they do not even oppose that particular issue, then they have waived the right to bring it up on appeal. So those claims for breach of contract, for an alleged violation of the Unfair Claims Practices Act, and for punitive damages in and of themselves should be affirmed because they have waived the right to contest them. And I'm bringing that up here today because in the appellant's brief, in their reply brief, and in argument here today, the appellant's counsel keeps making reference to the Nevada Unfair Claims Practices Act, NRS 686a310. But, you know, you can the argument, as I took it, was that that forms the basis or a guideline on the analysis of covenant of good faith and fair dealing. And the fact that he's abandoned a claim under the Act itself may or may not be relevant to that. That's the argument, but it's not the law in the State of Nevada. In Nevada. So what case you can answer the question that I was posing, opposing counsel, what case construes that particular provision in this context? There is a Federal case in Nevada which is the Clore Pioneer decision, I believe it is, Pioneer-Clore decision, which emphasizes that an action for bad faith is separate and distinct for a claim violation of Nevada's Unfair Claims Practices Act. No doubt about that. And bad faith has an element of mens rea, an intent, under the Unfair Claims Practices Act, is not, it's more of a negligence standard. And in Nevada, under the Allstate v. Miller decision, negligence is not a basis for bad faith in the State of Nevada. You have to have the intent. So as the Court stated in that Pioneer-Clore decision, a breach of the Unfair Claims Practices Act does not create bad faith, and it is not bad faith. And so the case law indicates that delay for the purpose of delay creates a claim for bad faith, but delay in and of itself does not. Again, you have to have that element of intent for the purpose of bad faith. Right. But if you get down to intent here, then, of course, you've got perhaps a factual  case, and you have, you can take that to the jury. I mean, that's a, I mean, if, I think the best case that your opponent has is that he can import the statute. He could, certainly, if he went to trial on this case, that would be a logical jury instruction to give, is to instruct the jury that under Nevada law, 30 days is the time in which you should make the claim. I mean, that, I can see that certainly coming in, so it's certainly relevant to our consideration of whether there's a factual issue on delay, right? I would respectfully disagree. Number one, I want to correct one misstatement that Mr. Sampson made when he referenced the Nevada Administrative Code. He said you have to resolve the claim within 30 days. That's not the language of that particular provision. It says you should complete your investigation within 30 days unless it cannot reasonably be completed within that time. But again, I would respectfully disagree, because those provisions pertain to a negligence standard, and at least the Federal courts in Nevada have recognized that is not a basis for bad faith. An element or an alleged violation of those statutes is not bad faith. You have to have that intent. So if you intend to delay. I think you understand that, but I think you misunderstand my question, is that when we're talking about when delay is reasonable and unreasonable, the state of administrative law and statutory law is relevant to that determination or can be. I mean, here we're trying to decide whether there's a factual issue in the amount of delay we had in this case. And what you're saying is we have to ignore what Nevada's statutory or administrative law has to say about that. That seems illogical to me. What I'm trying to say is relying upon the Administrative Code or NRS 686-8.310 is all well and good for a claim for a violation of that particular provision. They have waived the right to assert that claim because they did not address it below. And it cannot be resurrected on appeal when they did not in any way say they had a valid claim. I understand that argument, but you're basically – I think you're making a tough argument that we just – when the claim is precluded, we can't – we have to ignore the statute in its entirety when we're measuring how much delay is unreasonable. And, you know, I guess we'll have to consider that. So let's talk about the delay in this case. I mean, tell me, at what point does a delay become a factual issue that requires submission to a jury in your estimation under Nevada law? The original demand letter went out on – or was dated August 25th, 2005. And it said, in essence, please be advised my client is willing to settle the claim providing the policy limits are in my office within two weeks, together with proof that these are the only policy limits that apply. There were no medical records attached to that letter, no medical bills, no summary of what the treatment was. Instead, here's a signed medical authorization. Here's three medical providers that my client is treated at, which, as it turns out, one of which he hadn't even seen yet, and you've got two days to respond. The letter is dated the 25th. It's faxed out on Friday afternoon the 26th. It would have taken one to two days from the fax room to get to the adjuster's desk. The deadline is September 8th. So at that point in time, the only information that's been provided by the plaintiff's attorney is that it was a soft tissue injury. When you look at the timeframe between Monday the 29th or Tuesday the 30th and the 8th of September, that's ten calendar days. You've got an intervening weekend. You've got a holiday, Labor Day, and the adjuster may or may not have taken off one or two days around the holiday. So you're looking six to seven days at most to evaluate the entire matter, to send out letters, to get the records in, to determine if you want to pay. The evidence now shows in this case that Mr. Cleckley himself didn't even know he had a more serious injury until September 13th of that year, which is five days after the deadline had already run, and as the plaintiff's own expert has testified, that's what drove the potential value of the case. It would be impossible to respond and to pay a policy limits demand when the injury that drove the value wasn't even known until that time. Furthermore, and again I come back to the issue of delay, is that the adjuster by her own admission did not read the letter that was sent out until September 14th, 2005, not that she knew it was there, not that she was intentionally ignoring it, not that there was any policy at Dairyland to ignore it, but that because the total number of work days and her attention to other details, she got to it in the normal course of events. Well, I think the critical issue for you is the period of time after the letters, the information was faxed to Dairyland, and the 50 odd days that it took then to say, okay, we have a policy limits case in the tender, policy limits, and there's no explanation for a large chunk of that time. Her testimony, I believe, is that once she actually reviewed the records, she sent out a policy limits offer promptly. Isn't that the state of the record? As far as when she reviewed the records, which was November 7th, 2005, she immediately requested settlement authority. It was extended to her by her supervisor that evening after she already left work. The next morning, she sent a letter to the appellant's attorney advising him of the offer, also put a phone call into his office. Right. So the problem we have We did have a whole gap there. It was faxed and it was sitting in a file or someplace. We just don't know what happened, right? The problem we have in this case is determining exactly when the records from Centennial Spine actually arrived at Dairyland. The records that came in from Precision have a perforated date stamp on the side that says 9-26-05. The records that came in from Centennial do not have a date stamp on them. The testimony is it was most likely due to human error. The appellant's attorney is trying to state as an affirmative fact, well, they came in on 9-23. Now, he's asking us to construe the facts in the light most favorable of the plaintiff at summary judgment, and there's nothing conclusive about the facts or many of them right now at all. So we have to assume it came in in September for our purposes. If you you know, I just don't know how we get around that at summary judgment. Number one, I think it is speculation. I mean, you have to take inferences, but not purely. It's not purely speculation, but in any event, even assuming the records came in in September, again, there's no indication that the adjuster was aware of them, chose to ignore them, knew what they said and said, I don't care. At most, you have negligence on her part, which, as Judge Jones indicated in his order granting the summary judgment, that delay may have been frustrating to Mr. Cleckley. It may have even been negligence on the part of the adjuster, but in Nevada, under the Allstate v. Miller decision, negligence does not give rise to bad faith. Let's assume that it was a 100-day delay. Does that still apply, so that even with no other evidence as to bad faith, but twice as much time has elapsed? We can go three times as much, four times as much, and again, I think that would be an excellent argument to make for a claim violation of Nevada's Unfair Claims Practices Act, which requires that you do a prompt, fair, and efficient settlement of all actions. They've already waived that claim. For the purpose of bad faith in Nevada, you still have to have that elements of mens rea intent. There has to be some evidence of intent. Did the adjuster intend to achieve delay for the purpose of delay? And I've cited cases in my brief where the courts have held the mere factor of delay, even though it could have been done more expeditiously, is not bad faith, unless there was delay for the purpose of achieving delay. And that's why we don't have any facts in this particular case. But again, you don't even have to hang your hat solely on that particular issue. As I argued to the district court, and as I put in the brief here today, there were multiple reasons why, as a matter of law, there's no basis for the bad faith claims for each one of these different time frames, not only because of the fact that there's no evidence of intent between September 15th and November 7th, but also there's no triggering event, as indicated by the Federal case out of Georgia in Clingsley, that in order to be held liable for bad faith refusal to settle, there has to be something you have to refuse. The appellant's attorney has made the interesting argument on appeal that the adjuster was under the understanding that she could continue to settle the case for the policy limits, and that she had the understanding she could continue to do so through the end of October, beginning of November. Two problems with that argument. Number one, he never made the argument to the district court, and as this Court held just last year in the Thomas v. Ponder decision, this Court will not reverse an order granting summary judgment unless you present the facts to the district court in your opposition, which wasn't done here. But number two, there are no such facts. That never happened. There's no evidence in this case that she ever had such an understanding. The appellant's attorney never contacted Dairyland again at any time. Kennedy, She has to have some understanding because she offered policy limits in absent demand. When she reviewed the records and she saw what the value of the claim is, she made an offer. But what we're talking about is bad faith. There's nothing that says an insurance company can't review records and make an offer.  No, I'm responding to your argument is that there's no evidence in the record that she had any sort of understanding. Again, drawing inferences. What she said in her What she testified in her deposition was that she was still hopeful that she could settle the case so she could continue to work on it. Nothing wrong with her to continue to do so. The question is, is it bad faith because of the delay issue that you raised before? So are you saying that if at the end of the two-week period, she had simply put that in the dead pile and not opened it again, even if there had been the medical records that came in, that that would have been no basis to find bad faith because there wasn't a subsequent demand that would serve as a trigger? Well, it's sort of speculation at this time because she did respond to that letter when she saw it. And she wrote a letter back to the plaintiff's attorney. I'm looking into it. Please keep me advised as to the status of your client's treatment. So she wasn't ignoring it. But from the standpoint of bad faith, when you're talking about the delay, there was never a new demand deadline. You have to respond by a certain deadline. And if you don't, forget it. Right. No, I understand that. But there is still, I think, and your agent acknowledged that, too, you still have a duty to keep working on the case. There was new information, a suit had been filed and so forth. I mean, as you said, you still can tender. The duty to settle, the duty to investigate, does not stop because you don't have a pending demand. And again, that would be pursuant to Nevada statutory law under the Unfair Claims Practices Act. And what we're talking about here is, does it rise to the level of intent and bad faith? And that's where we don't have the evidence. We don't have a triggering event. At most, we have negligence, which is not bad faith. May be a breach of the Unfair Claims Practices Act, but it's not bad faith. In addition, we also have the issue of proximate cause in that, under the laws I've cited from the Seventh Circuit, the Tenth Circuit, and also from an appellate court in the state of Illinois, when you arbitrarily withdraw an offer. Right. But those are, you know, those are based on states that have different provisions from your state. I mean, you can't really rely on a Seventh Circuit case to talk about Nevada law. I mean, we can talk generic elements of bad faith, but frankly, as you know, I could import Montana. I can import California, which I don't think you'd like, or Arizona. And you would get a, all those states would give you a different result. Idaho would be favorable for you. Montana and Hawaii would be terrible for you. You can't import, the Seventh Circuit cases really have no bearing here on that issue. Well, the problem we have in Nevada, even though Nevada's been a state since 1864, we don't have a heck of a lot of case law on a heck of a lot of different issues. And when we do, we're all excited because now we have some guidance on a specific issue. So we, a lot of times, have to look outside the state of Nevada. That's a fair point. To make the point. And I've directed the court, as I did to the district court, these number of cases that if you make a demand, and then the insurance company offers the exact same amount, and you say, no, I'm not going to take it without any reason why. It's no longer valid. That doesn't give rise to a case for bad faith. And there's any number of reasons why you may not accept an offer when it's made after the fact, because you may have incurred additional litigation expenses. You've taken depositions. You've incurred costs. And therefore, that may give you rise for some reason not to accept it. But here, the testimony from the appellant's own attorney in his deposition was, we would still have accepted it end of October, the first day in November. But when it's made, the offer on November 8th, why wasn't it accepted? They didn't incur any expenses during that time. And that's his own testimony from his own deposition. Why was it not accepted during that time frame? Well, your, our questions have taken you over time. Judge Fletcher, do you have any questions? No. All right. Thank you for your argument. All right. Thank you, Your Honor. And you have three minutes. Thank you, Your Honor. I want to begin with this misnomer that the Nevada law on bad faith requires some kind of intent. And I'll just read directly from the Miller case. In fact, what is required of an insurance company is to, quote, ''The insurer must act in good faith and give the insured's interests equal consideration with its own.'' And more importantly, on page 327 of the Miller decision, it says, quote, ''Once an insurer violates its duty of good faith and fair dealing, it is liable to pay all compensatory damages approximately caused by its breach. However, punitive damages require proof of motive and intent to violate a duty.'' And so the compensatory element via the Supreme Court does not require any type of intent or evil motive, only as it goes to punitive conduct. And the interesting thing is that there seems to be, you know, no at one point they say it's do you weigh the interest equally. At another point in time, he talks about maybe perhaps or the Court talks about perhaps negligence is not enough. And so there seem to be conflicting statements within Miller as to what bad faith is or what it is not. But what it is clear and distinct in saying what bad faith is, is a question of fact for the jury. That point is made abundantly clear in the Miller case. And with all due respect to Judge Thomas, there is no but in that proportion of the decision. No, but I think if we certified this in Nevada Supreme Court, I'm sure they would say not every case goes to the jury just because there may be a question of fact and bad faith. And they've said that other cases, again, when it involves contractual interpretation or standing. I want to answer the question, and I apologize for not being on the ball in my initial comments, the question of what case most directly speaks to the delay. And it occurred to me when defense counsel or when Respondent's counsel was talking and mentioned a Federal case, because there is a Federal decision that talks directly about a delay. It was issued by Judge Jones. It was issued approximately a month before this Hicks decision came down. And it was Pacina v. California Casualty where the same two-week demand letter was made. And Judge Jones in that case said that is not unreasonable as a matter of law. He indicated he didn't feel very impressed with the two weeks himself, but that it was not his call and had to go to the jury. And, Your Honors, respectfully, either a two-week demand is reasonable as a matter of law or it's not. If it's going to focus on, well, it depends on what the facts are and what the injuries are and what the submissions are, well, then that's all got to be weighed by a jury who are the arbiters of the facts in the case. In terms of NRS 686A, you talk about counsel says, well, you need to complete your investigation and not necessarily resolve the claim. The problem is they don't even start the investigation. They send out the letters. The letters show up 9 days later on September 23rd. And as of November 7th, per the testimony, they haven't even read them yet. And in terms of waiver, Your Honor, the refusal to resolve a claim, that's all our opposing brief in the summary motion. We didn't reference bad faith or the Unfair Claims Practices Act or breach of contract. We simply said they refused to resolve the claim. That is a breach of the contract. That is bad faith. And that is a violation of the Unfair Claims Practices Act. And just because we didn't put pretty labels on them or bows and ribbons, we laid out specifically they did not resolve the claim in time, it violates all three. There is no circumstance where we say, well, these facts go to bad faith and these facts go to contract. It's all a breach of the contract. It's all bad faith. And it's all a violation of the Unfair Claims Practices Act. And so those claims were not waived, Your Honor. My time is up. Thank you very much. Thank you both for your arguments. The case has now been submitted for decision. Thank you.
judges: Rosenthal, Fletcher B. , Thomas